IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROOFERS' PENSION FUND; ROOFERS' UNIONS WELFARE TRUST FUND; CHICAGO ROOFERS' APPRENTICESHIP AND TRAINING FUND; ROOFING INDUSTRY ADVANCEMENT AND RESEARCH FUND; ROOFERS' LOCAL 11 PROMOTIONAL AND ORGANIZATIONAL FUND; NATIONAL ROOFING INDUSTRY PENSION FUND; ROOFERS AND WATERPROOFERS RESEARCH AND EDUCATION JOINT TRUST FUND; and UNITED UNION OF ROOFERS, WATERPROOFERS AND ALLIED WORKERS LOCAL NO. 11, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 24 C 2772 |
| v. | ) ) | Judge Robert W. Gettleman |
| LANGLOIS ROOFING, INC., and ONTOP EXTERIORS, LLC, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiffs brought a three-count complaint against defendants Langlois Roofing, Inc. ("Langlois Roofing") and OnTop Exteriors, LLC ("OnTop") alleging breach of contract, alter-ego liability, and single employer liability due to defendants' alleged failure to make employer contributions to various funds in accordance with the terms of the Standard Working Agreement ("SWA") that Langlois and plaintiffs are party to. This court entered an order of default against defendants on May 13, 2024 (Doc. 11). OnTop and Langlois both move to set aside that default (Docs. 25, 30). For the reasons below, both motions are denied.

1

## BACKGROUND

The focus of the case is defendants' alleged breach of the SWA from April 1, 2020, through present. Rende O. Langlois ("Langlois Sr.") was the owner of Langlois Roofing through 2022. He then sold his interest in Langlois Roofing to his son, Rende G. Langlois ("Langlois Jr."). Prior to his acquisition of the company, Langlois Jr. had a management role in Langlois Roofing.

Wendy Langlois is the sole owner of OnTop, which was formed in 2019. She is the wife of Langlois Sr. and stepmother of Langlois Jr. She is listed as the registered agent for OnTop. Both OnTop and Langlois Roofing share the same principal place of business and registered agent address in Kankakee, Illinois.

## DISCUSSION

**Personal Jurisdiction**

Defendants argue that because of defective service, this court lacked personal jurisdiction over OnTop when it entered the order of default. Defendants appear to concede that service on Langlois Roofing was proper and that the court had personal jurisdiction over Langlois Roofing when default was entered.

Defendants are correct that "[v]alid service of process is a prerequisite to a district court's assertion of personal jurisdiction." Swaim v. Moltan Co., 73 F.3d 711, 719 (7th Cir. 1996). The question, then, is whether plaintiff's service of process on OnTop was valid.

Service of process on a business entity is governed by Fed. R. Civ. P. 4(h). Under Rule

2

4(h), there are two possible ways to serve a non-foreign business entity such as OnTop. First, service can be accomplished "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A). That rule provides that service can be accomplished by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Second, service can be accomplished "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B).

The general facts surrounding the service of process in this case are as follows. OnTop and Langlois Roofing share the same office and registered agent address at 1850 Grinnell Road in Kankakee, Illinois. On April 17, 2024, plaintiff's process server served Langlois Jr. with copies of the complaint and summons for both Langlois Roofing and OnTop at the registered address. The process server's affidavit states that "Langlois [Jr.] stated that he was authorized to accept service of process on behalf of Langlois and OnTop."

Defendants argue that Wendy Langlois, as the sole shareholder and registered agent of OnTop, is the only person authorized to receive service on behalf of OnTop. Because plaintiffs failed to serve Wendy, the argument goes, the service was invalid.

The court disagrees because it finds that the service on OnTop was sufficient as a matter of Illinois law. Illinois generally allows for two methods to serve process on a limited liability company: (1) service "upon the registered agent appointed by the limited liability company;" or (2) service "upon the Secretary of State as provided in this Section." See ILCS 180/1-50(a).

3

OnTop contends that plaintiffs' service fails under Illinois law because plaintiffs did not serve Wendy Langlois, the registered agent of OnTop, or the Secretary of State. But 805 ILCS 180/1-50(d) makes clear that these two listed methods are not exhaustive: "[n]othing herein contained shall limit or affect the right to serve any process, notice, or demand required or permitted by law to be served upon a limited liability company in any other manner now or hereafter permitted by law."

In limited circumstances, Illinois law permits service upon individuals other than the registered agent or the Secretary of State. Illinois courts have repeatedly permitted "service upon an intelligent clerk of a company who acts as a receptionist and who understood the purport of the service of summons." Megan v. L.B. Foster Co., 275 N.E.2d 426, 427 (Ill. App. 2d 1971); see also, e.g., People v. Beaulieu Realtors, Inc., 494 N.E.2d 504, 507 (Ill. App. 1st 1986) ("Courts have found the character of these positions to be commensurate with the character of the agency required for purposes of service."); Island Terrace Apartments v. Keystone Serv. Co., 341 N.E.2d 41, 44 (Ill. App. 1st 1975) (similar).[1] Whether such a person is an appropriate agent for service of summons is a factual question. Bober v. Kovitz, Shifrin, Nesbit, No. 03 C 9393, 2005 WL 2271861, at *4 (N.D. Ill. Sept. 14, 2005) (citing Citicorp Sav. of Ill. v. Rucker, 692 N.E.2d 1319, 1325 (Ill.App.Ct.1998)).

While Langlois Jr. was not formally employed at OnTop, he stated to the process server that he was authorized to receive service documents on behalf of OnTop. As a matter of equity,

---

[1] While service of process on an LLC is governed under a separate, and relatively new, statutory section from service of process on a corporation in the Illinois code, compare 805 ILCS 180/1-50 and 735 ILCS 5/2-204, Illinois courts have continued to apply the case law on corporate service of process to LLCs. See generally MB Fin. Bank, N.A. v. Ted & Paul, LLC, 990 N.E.2d 764, 774 (Ill. App. 1st 2013) (applying Illinois case law regarding service of process upon "a private corporation" to an LLC.)

4

this cuts strongly against OnTop's argument that it was not properly served, especially in the context of an alter ego/ single employer case. OnTop should not receive a windfall from what the court views as its own misrepresentation if, in fact, Langlois Jr. was not authorized to accept service. See Liu v. Sec. & Exch. Comm'n, 591 U.S. 71, 79–80, 401 (2020) (explaining that a "foundational principle" of equity is that "it would be inequitable that a wrongdoer should make a profit out of his own wrong" (cleaned up)); see generally Jansma Transp., Inc. v. Torino Baking Co., 169 N.E.2d 829, 831–32 (Ill. App. 1st 1960) (explaining that "it is proper for the court to take into consideration the nature of the service alleged to have been had as bearing on the equities of the case"). There is also evidence in the record that Wendy Langlois was "never in this office" at the registered address. In addition, when Langlois Jr. accepted service for OnTop, he was simultaneously served with papers for Langlois Roofing, a domestic corporation for which he is the sole owner and registered agent. Of course, OnTop and Langlois Roofing are co-defendants in this case. Thus, Langlois Jr. clearly understood the importance of the service documents when he accepted them on behalf of OnTop. In these circumstances, the court finds that Langlois Jr. was a proper recipient of service for OnTop under Illinois law.[2] Because service was valid under Illinois law, it was valid under Fed. R. Civ. P. 4(e)(1). Accordingly, the

---

[2] The analysis of whether service was sufficient under Rule 4(h)(1)(b) yields a similar result. Service of process on a secretary can be sufficient, especially when the defendant is typically absent. See Union Asbestos & Rubber Co. v. Evans Prods. Co., 328 F.2d 949, 952-53 (7th Cir. 1964). Other factors that courts have considered in deciding that service was proper under Rule 4(h)(1)(B) include whether the person served was "the only employee in the office when the process server arrived," Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc., 840 F.2d 685, 689 (9th Cir. 1988), whether service was "made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service," Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa, 428 F. Supp. 1237, 1251 (S.D.N.Y. 1977), and whether the person "identified [them]self as authorized to accept service and voluntarily accepted the documents." Kuhlik v. Atl. Corp., 112 F.R.D. 146, 148 (S.D.N.Y. 1986). Here, there is evidence that Wendy Langlois was "never" in the office, Langlois Jr. was apparently the only person in the office for OnTop, and Langlois Jr. identified himself as authorized to accept service and voluntarily did so. In these circumstances, "[t]he process server was not required to make further inquiry but rather was entitled to rely on the [Langlois Jr.'s] representation of authority." Kuhlik, 112 F.R.D. at 148.

court finds that it had personal jurisdiction over OnTop at the time that the order of default was entered.

**Rule 55(c)**

Under Fed. R. Civ. P. 55(c), the district court "may set aside an entry of default for good cause." The party seeking to vacate an entry of default prior to judgment must show "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." Cracco v. Vitran Exp., Inc., 559 F.3d 625, 630 (7th Cir. 2009). This test is the same test that applies for motions seeking relief from default judgment under Fed. R. Civ. P. 60(b), but the test is "more liberally applied in the Rule 55(c) context." United States v. Di Mucci, 879 F.2d 1488, 1495 (7th Cir.1989).[3]

Defendants offer little explanation of the good cause for their default. Defendants argue that "the lack of filing an answer or moving to vacate the default order was neither the result of neglect or willful inaction. The decision is [sic] based upon the knowledge and, perhaps naïve assumption, that the auditors would analyze the financial records in a manner that reflected the actual operations of the company." As best the court can tell, defendants' contention is that they did not file an answer because they assumed that the ongoing audit, ordered by this court in the default order, would show that the two companies were in fact not a single employer or alter egos of one another. But a party's confidence in its success on the merits is unrelated to its procedural obligation to answer a complaint and otherwise comply with the Federal Rules of Civil Procedure. To put it differently, the results of the audit—no matter what they showed—

---

[3] The court construes the parties' arguments under Rule 60(b) as arguments under Rule 55(c). Rule 60(b) is inapplicable because default judgment has not yet been entered. See Fed. R. Civ. P. 55(c) "Setting Aside a Default or a Default Judgment. The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)."

6

have no relation to defendants' failure to "to plead or otherwise defend." Fed. R. Civ. P. 55(a).

Defendants' action to correct the default was not quick; defendants' counsel first entered an appearance on March 12, 2025, nine months after default was entered. In addition to having been served with the summons and complaint on April 17, 2024, defendants were also served with the default order on June 10, 2024. That service was made on both companies at the registered address (this time service for OnTop was accepted by Langlois, Sr., who identified himself as an officer of OnTop and authorized to accept service) and upon Wendy Langlois personally at her place of residence. In addition, OnTop's counsel was informed in writing about the default order on June 6, 2024, and the record shows that plaintiffs' and OnTop's counsel actively communicated about the default order. In fact, OnTop complied with the default order's direction to participate in the audit, evidencing not only knowledge of the default order, but also of the requirements of that order. The court concludes that defendants received notice and had actual knowledge of the default order nine months prior to taking any corrective action; this is not quick action to correct the default.

Defendants offer a colorable defense to the allegations in the complaint. The determination of whether two entities qualify as a single employer requires a factual inquiry into four factors: "(1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." Lippert Tile Co. v. Int'l Union of Bricklayers & Allied Craftsmen, Dist. Council of Wis. & Its Local 5, 724 F.3d 939, 946 (7th Cir. 2013). An alter-ego finding requires an inquiry into the same factors and an additional showing of a "disguised continuance" or intent to avoid obligations under a collective bargaining agreement. Trs. of Pension, Welfare & Vacation Fringe Ben. Funds of IBEW Loc. 701 v. Favia Elec. Co., 995 F.2d 785, 789 (7th Cir. 1993).

7

Defendants argue that OnTop and Langlois are two separate companies with separate ownership, officers, employees, products, financial books, etc. Thus, defendants argue, plaintiffs will not be able to establish that the two companies are a single entity or that one is an alter ego of the other. On the other hand, the court notes that an exhibit submitted by plaintiffs (Doc. 34-10) severely undercuts the merits of defendants' proffered defense. This exhibit contains excerpts of OnTop's accounts payable ledger during the contested period. This ledger includes payments to Langlois Sr., the owner of Langlois during the relevant period, of at least $90,000 labelled as "owners draws." This is strong evidence that, contrary to defendants' affidavits, Langlois Sr. in fact had an ownership interest in OnTop and that the two entities were interrelated.

Nevertheless, the court's role is not to decide the merits of the case here. Even under the more liberal Rule 55(c) standard, defendants have wholly failed to make two of the three required showings to vacate a default. See Cracco, 559 F.3d at 630. Defendants offer no good cause for the default and did not quickly take action to correct it. Even after crediting defendants' proffered defense, the court finds that defendants have failed to meet their burden under Rule 55(c).

## **CONCLUSION**

For the above reasons, defendant's motions to vacate the entry of default (Docs. 25, 30) are denied.

**ENTER:**

Robert W. Gettleman
United States District Judge

**DATE: October 3, 2025**